IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KARL O. DICKS, JAMES RYAN MALISH, CALVIN C. GRIFFIN, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF HAWAII, OFFICE OF ELECTIONS; ELECTIONS COMMISSION, <br><br> Defendants. | CIVIL NO. 22-00347 JAO-WRP <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT AND REQUEST FOR INJUNCTION FILED AUGUST 1, 2022 WITH PREJUDICE, OR IN THE ALTERNATIVE, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
COMPLAINT AND REQUEST FOR INJUNCTION FILED
AUGUST 1, 2022 WITH PREJUDICE, OR IN THE ALTERNATIVE,
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pro se Plaintiffs Karl Dicks ("Dicks"), James Malish ("Malish"), and Calvin

Griffin ("Griffin") (collectively, "Plaintiffs") challenge the design of the 2022

primary election ballots under Hawai'i Revised Statutes ("HRS") §§ 12-21 and 12-

31.  Defendants the State of Hawai'i Office of Elections and the Election

Commission (collectively, "Defendants") seek dismissal, or alternatively summary

judgment, pursuant to the *Rooker-Feldman* doctrine, the Eleventh Amendment, for

lack of federal question, and for failure to state a claim.  ECF Nos. 18, 21.  For the following reasons, the Court GRANTS Defendants' Motion.

## BACKGROUND

**A.    Factual History**

Plaintiffs allege that the primary election ballots were defective in that:  (1) voters are required to select a "political preference"; (2) political party names and their associated candidates are mixed with nonpartisan contests; and (3) the "Democrat[ic] Party" is the only party listed on the back of the ballot while the instructions requiring voters to select one political party are on the front of the ballot.  ECF No. 1 ("Compl.") at 4–5.  According to Plaintiffs, these defects will cause confusion and disadvantage candidates listed on the front of the ballot, including them.  *Id.* at 5.  Dicks is a Republican, and Malish and Griffin are nonpartisan.  *Id.*

On June 13, 2022, Dicks and Malish filed a complaint with the Hawaiʻi Supreme Court claiming that the primary election ballot does not meet statutory guidelines because "[n]onpartisian [sic]" is treated as a party when it is not one.  ECF No. 18-7 at 2.  In an Order Dismissing Complaint ("Dismissal Order"), the Hawaiʻi Supreme Court concluded that it lacked jurisdiction to consider the complaint.  ECF No. 18-8.

On August 22, 2022, a number of individuals filed an election complaint and preliminary injunction with the Hawaiʻi Supreme Court, raising the same challenges presented here.  ECF No. 21-2.  Plaintiffs were not parties to that complaint, but on August 23, 2022, Dicks filed a motion for permissive joinder.  ECF No. 21-3.  On August 29, 2022, the Hawaiʻi Supreme Court dismissed this election complaint on the basis that the remedies sought — "nullification of the 2022 Primary Election results and requiring all qualified candidates to advance to the 2022 General Election" — are not authorized by HRS § 11-173.5(b).  *See Cordery v. State Off. of Elections*, SCEC-22-0000504, 2022 WL 3715875, at *2 (Haw. Aug. 29, 2022), https://www.courts.state.hi.us/wp-content/uploads/2022/08/SCEC-22-0000504ord.pdf (last visited Aug. 30, 2022).

## B.    Procedural History

Plaintiffs commenced this action on August 1, 2022.  They do not articulate specific claims but assert that the primary election ballot violates HRS §§ 12-21 and 12-31, and that improper votes shall not be counted pursuant to HRS § 12-31.  Compl. at 4.  Claiming that federal question is the basis for subject matter jurisdiction, Plaintiffs cite the Voting Rights Act, 52 U.S.C. §§ 10101, 10301, and 10304, and Article I, § 4 of the Constitution.  *Id.* at 3.

Plaintiffs request an immediate injunction against the Office of Elections enjoining it from counting the primary election ballots and releasing the primary

election results until a determination is made and the time for appeal has run.  *Id.* at

5.  They also ask the Court to order the State to:  (1) hold a new primary election

with proper ballots within 60 days of the Court's determination or (2) allow all

primary election candidates to advance to the general election.  *Id.*

Just before the August 13, 2022 primary election, Plaintiffs filed a Motion

for Emergency Injunction.  ECF No. 8.  Because only Dicks signed the motion, the

Court notified Plaintiffs that, due to their pro se statuses, they must each sign all

papers to comply with Federal Rule of Civil Procedure ("FRCP") 11, and that it

would not take any action on the motion until Plaintiffs did so.  ECF No. 9.

Plaintiffs complied on August 15, 2022.  ECF No. 10.

At the August 18, 2022 status conference, Defendants indicated that they

planned to file the present Motion to Dismiss Complaint and Request for

Injunction Filed August 1, 2022 With Prejudice, or in the Alternative, Defendants'

Motion for Summary Judgment.  ECF Nos. 12; 18.  The Court decided that it

would address the Motion to Dismiss before the Motion for Emergency Injunction.

ECF No. 15.

Defendants filed their Motion to Dismiss on August 23, 2022.  ECF No. 18.

The Court then directed the parties to explain (1) whether Plaintiffs' claims are

barred by the Eleventh Amendment and (2) assuming the federal statutes cited by

Plaintiffs conferred original jurisdiction, and any claims predicated on those

4

statutes are dismissed, whether the Court should decline to exercise supplemental jurisdiction. ECF No. 19. Plaintiffs filed a response on August 26, 2022. ECF No. 20. The same day, Defendants filed a Supplemental Memorandum in Support of their Motion to Dismiss. ECF No. 21.

On August 29, 2022, the Court held a hearing. ECF No. 22. Since then, Plaintiffs have filed unauthorized memoranda in support of their Motion for Emergency Injunction. ECF Nos. 23–24.

## LEGAL STANDARDS

### A.    Rule 12(b)(1)

Under FRCP 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.[1] *See* Fed. R. Civ. P. 12(b)(1). A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack challenges the sufficiency of the allegations contained in a complaint to invoke federal jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

---

[1] *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." (citations omitted)).

**B.      Rule 12(b)(6)**

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).  If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

Defendant moves to dismiss the Complaint on the following grounds:  (1) *Rooker-Feldman* doctrine; (2) Eleventh Amendment; (3) absence of federal question; and (4) failure to state a claim.  ECF Nos. 18-1, 21.

As a preliminary matter, the Court notes that it will address the Motion as one for dismissal, not summary judgment.  Under FRCP 12(b)(6), review is ordinarily limited to the contents of the complaint.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell*, 266 F.3d at 988.  A Rule 12(b)(6) motion is treated as a motion for summary judgment if matters outside the pleadings are

considered.  *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

However, courts may "consider certain materials — documents attached to the

complaint, documents incorporated by reference in the complaint, or matters of

judicial notice — without converting the motion to dismiss into a motion for

summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

(citations omitted).  Under Federal Rule of Evidence 201, a court may take judicial

notice of facts "not subject to reasonable dispute" that either "(1) [are] generally

known within the trial court's territorial jurisdiction; or (2) can be accurately and

readily determined from sources whose accuracy cannot reasonably be

questioned."  Fed. R. Evid. 201(b)–(c)(1).  A court "may take notice of

proceedings in other courts, both within and without the federal judicial system, if

those proceedings have a direct relation to matters at issue." *United States ex rel.*

*Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.

1992) (internal quotation marks and citations omitted); *see Bykov v. Rosen*, 703 F.

App'x 484, 487 (9th Cir. 2017) (holding that the district court did not abuse its

discretion by taking judicial notice of state court proceedings).  Because the

attachments to the parties' submissions fall under these categories, the Court need

not treat the Motion as one for summary judgment.

**A.** ***Rooker-Feldman* Doctrine**

Defendant argues that the Court lacks jurisdiction over Plaintiffs'

claims under the *Rooker-Feldman* doctrine because they are effectively asking this Court to review and overturn the Hawaiʻi Supreme Court's Dismissal Order.  ECF No. 18-1 at 11–14.  "Under *Rooker–Feldman*, lower federal courts are without subject matter jurisdiction to review state court decisions, and state court litigants may therefore only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the United States."  *Mothershed v. Justs. of the Sup. Ct.*, 410 F.3d 602, 606 (9th Cir. 2005) (citations omitted).  District courts are barred from exercising jurisdiction over not only direct appeals of state court decisions, "but also over the 'de facto equivalent' of such an appeal."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (citation omitted).  Courts "pay close attention to the *relief* sought by the federal-court plaintiff" in determining whether an action is a de facto appeal.  *Id.* at 777–78 (internal quotation marks and citation omitted).  A de facto appeal is found "when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court."  *Id.* at 778 (internal quotation marks and citations omitted); *see also Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (explaining that a plaintiff's claims must arise from the state court judgment, not merely "when a party fails to obtain relief in state court" (citation omitted)); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (explaining that *Rooker-*

*Feldman* precludes adjudication of claims when the redress sought by the plaintiff is an "undoing" of the prior state court judgment).

 *Rooker-Feldman* does not "prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation." *Mothershed*, 410 F.3d at 606.  However, district courts lack jurisdiction "'over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional,'" which may only be reviewed by the Supreme Court.  *Id.* at 607 (citations omitted).  As-applied constitutional claims are barred because they are de facto appeals of state court decisions.  *See Scheer v. Kelly*, 817 F.3d 1183, 1186 (9th Cir. 2016).

 When a case "is, in part, a forbidden de facto appeal from a judicial decision of a state court," a federal court "must refuse to hear the forbidden appeal." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).  "As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id.*  Claims are "inextricably intertwined" "where 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Cooper*, 704 F.3d at 779 (some internal quotation marks and citation omitted).

Applying this framework, the Court finds that Plaintiffs' claims, as pled, are not barred by *Rooker-Feldman*.  Although Dicks and Malish presented their challenge regarding the design of the primary election ballots under HRS § 12-21 — also invoked here — to the Hawaiʻi Supreme Court, the case was dismissed for lack of jurisdiction.  ECF No. 18-8 at 2.  The Complaint here does not request a review of or seek to undo the Dismissal Order.  Nor would a favorable decision in this case undercut the Hawaiʻi Supreme Court's conclusion that it lacked jurisdiction to consider Dicks and Malish's primary election ballot challenge.  If anything, Plaintiffs merely seek relief in a different venue and *Rooker-Feldman* does not prohibit that.  Moreover, *Rooker-Feldman* does not bar Griffin's claims because he was not a plaintiff in the state court action.  *See Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994).

Interestingly, in their response, Plaintiffs argue for the first time that the Hawaiʻi Supreme Court erred by finding that it lacked jurisdiction to address Dicks and Malish's primary election ballot design challenge.  ECF No. 20 at 4–5.  They believe that the Hawaiʻi Supreme Court decided that the ballot issue — which was within its power to address and remedy — was less important than the "procedural" issue of jurisdiction.  *Id.*  At the hearing, Plaintiffs continued to criticize the Hawaiʻi Supreme Court for shirking its duty to address the challenge, and for doing so in a conclusory manner without any consideration of the issues.

11

*Rooker-Feldman*'s applicability is a much closer call in light of Plaintiffs' criticism of the Hawaiʻi Supreme Court's actions.  However, because Plaintiffs ultimately seek relief on the merits and do not appeal or request relief from the Dismissal Order, the Court concludes that *Rooker-Feldman* does not bar Plaintiffs' claims.

**B.    Eleventh Amendment**

Defendants also argue that because they are state agencies that did not consent to suit, the Eleventh Amendment bars Plaintiffs' claims.  ECF No. 21 at 4. "The Eleventh Amendment shields unconsenting states from suits in federal court," *K.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)), and bars individuals from bringing lawsuits against a state or an instrumentality of a state for monetary damages or other retrospective relief.  *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).  It "applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)).  Suits against state officials in their official capacities are likewise barred because they constitute suits against the state itself.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). State law claims asserted in federal court against states, state agencies, and state officials acting in their official capacities are barred by the Eleventh Amendment.

*See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1160–61 (9th Cir. 1988).

Eleventh Amendment immunity is not absolute, however.  Congress may abrogate a state's immunity, or a state may waive immunity.  *See Clark v. California*, 123 F.3d 1267, 1269 (9th Cir. 1997).  In addition, under the *Ex parte Young* exception to Eleventh Amendment immunity, "private individuals may sue state officials in federal court for *prospective* relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity."  *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011)).  *Ex parte Young* is based on the proposition "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."  *Va. Office for Prot. & Advocacy*, 563 U.S. at 255.  It does not apply "when 'the state is the real, substantial party in interest.'"  *Id.* (some internal quotation marks and citation omitted).  "A state is deemed to be the real party in interest where 'the judgment sought would . . . interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'"  *Cent. Rsrv.*, 852 F.2d at 1161 (alteration in original) (some internal quotation marks and citation omitted).

Here, the State has not consented to suit in federal court.  Therefore, the Eleventh Amendment bars Plaintiffs' state law claims against Defendants, which are state agencies.[2]  *See Griffin v. Hawaii*, Civ. No. 20-00454 SOM/KJM, 2021 WL 473720, at *3 (D. Haw. Feb. 9, 2021) (identifying the State of Hawai'i, Office of Elections as a state agency).  Nor has Congress abrogated immunity for 42 U.S.C. § 1983 claims, to the extent Plaintiffs attempt to assert a civil rights claim under Article I, § 4 of the Constitution.  *See Will*, 491 U.S. at 66–67; *Griffin*, 2021 WL 473720, at *3 (concluding that the Eleventh Amendment barred the plaintiff's civil rights claim against the State of Hawai'i and the Office of Elections).

In contrast, it appears that Congress abrogated Eleventh Amendment immunity in enacting the Voting Rights Act.[3]  *See OCA-Greater Houston v. Texas*,

---

[2]  The State authorizes election challenges, but the Hawai'i Supreme Court has exclusive jurisdiction, and the scope of those challenges are limited.  *See* HRS § 11-172.

[3]  When the Court questioned defense counsel at the hearing about whether the Voting Rights Act abrogated Eleventh Amendment immunity, he responded that such immunity can never be abrogated.  Defense counsel maintained that the State could not be sued in federal court even if the State were accused of widespread racial disparity affecting the right to vote.  As already noted, Eleventh Amendment immunity is not absolute, and Congress has abrogated Eleventh Amendment immunity through the enactment of various statutes.  *See, e.g.*, *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (noting Congress's intent to abrogate the states' immunity as to the Family and Medical Leave Act's family-leave provision); *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 976 (9th Cir. 1994) (recognizing abrogation of Eleventh Amendment immunity with respect to Title

(continued . . .)

867 F.3d 604, 614 (5th Cir. 2017); *Mixon v. Ohio*, 193 F.3d 389, 398 (6th Cir. 1999). Plaintiffs' Constitutional and state law claims are therefore barred by the Eleventh Amendment, while their Voting Rights Act claims are not.

## C. Federal Claims

### 1. Voting Rights Act Claims

Defendants argue that under the well-pleaded complaint rule, the Court lacks federal question jurisdiction because Plaintiffs fail to present allegations implicating the Voting Rights Act. ECF No. 18-1 at 14–16. Insofar as Plaintiffs cite multiple provisions of the Voting Rights Act — 52 U.S.C. §§ 10101(a), (b), and (d),[4] 10301(b), 10304(a) — the issue is not whether federal question jurisdiction exists, but whether Plaintiffs adequately state claims thereunder.

"Congress enacted the Voting Rights Act of 1965 for the broad remedial purpose of 'rid[ding] the country of racial discrimination in voting.'" *Chisom v. Roemer*, 501 U.S. 380, 403 (1991) (alteration in original) (citation omitted). Section 10101(a) mandates the entitlement to vote at all elections "without distinction of race, color, or previous condition of servitude." 52 U.S.C.

_____

(. . . continued)
VII claims); *Alaska v. EEOC*, 564 F.3d 1062, 1066 (9th Cir. 2009) (en banc) (recognizing Congress's intent to abrogate sovereign immunity in the Government Employee Rights Act).

[4] Subsection (d) merely vests district courts with jurisdiction over proceedings instituted under § 10101. *See* 52 U.S.C. § 10101(d).

§ 10101(a)(1).  It also prohibits persons acting under color of state law from:  (1) applying different standards, practices, or procedures "in determining whether any individual is qualified under State law or laws to vote in any election"; (2) denying the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election"; and (3) "employ[ing] any literacy test as a qualification for voting in any election unless" certain requirements are met.  52 U.S.C. § 10101(a)(2).  Section 10101(b) prohibits the use of intimidation, threats, or coercion to interfere with another's right to vote.  *See* 52 U.S.C. § 10101(b).

Section 10301 "forbids the imposition or application of any practice that would deny or abridge, on grounds of race or color, the right of any citizen to vote." *Garza v. County of Los Angeles*, 918 F.2d 763, 765 (9th Cir. 1990); *see* 52 U.S.C. § 10301(a).  To establish a violation under this section, "a plaintiff must show that 'under the totality of the circumstances, a challenged election law or procedure had the effect of denying a protected minority an equal chance to participate in the electoral process.'" *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 377 (9th Cir. 2016) (citation omitted); *see* 52 U.S.C. § 10301(b).

Section 10304 required covered jurisdictions to obtain preclearance from the federal government before making changes to voting laws.  *See* 52 U.S.C.

§ 10304(a); *Shelby County v. Holder*, 570 U.S. 529, 534–35 (2013).  However, this requirement was eliminated when the Supreme Court "declared unconstitutional the formula in Section 4(b) of the [Voting Rights Act] for determining 'covered jurisdictions,' thereby eliminating preclearance under [§ 10304] for any previously covered jurisdiction." *Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989, 1008 (9th Cir. 2020) (en banc) (discussing *Shelby County*, 570 U.S. 529), *rev'd and remanded on other grounds sub nom.*, *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. __, 141 S. Ct. 2321 (2021).

Whether the Voting Rights Act provisions cited by Plaintiffs create a private right of action remains an open question and is the subject of dispute.  *See Brnovich*, 594 U.S. at __, 141 S. Ct. at 2350 (Gorsuch, J. and Thomas, J., concurring ) ("Our cases have assumed — without deciding — that the Voting Rights Act of 1965 furnishes an implied cause of action under § 2. . . .  Because no party argues that the plaintiffs lack a cause of action here, and because the existence (or not) of a cause of action does not go to a court's subject-matter jurisdiction, this Court need not and does not address that issue today." (citations omitted)); *see Davis v. Commonwealth Election Comm'n*, Case No.: 1-14-CV-00002, 2014 WL 2111065, at *9–10 (D. N. Mar. I. May 20, 2014), *aff'd*, 844 F.3d 1087 (9th Cir. 2016) (noting that the Ninth Circuit has not determined whether

§ 10101 cases may be brought by private citizens and that courts have reached different outcomes).  But even assuming Plaintiffs may bring suit under the above-referenced provisions, they fail to state a claim.

The Complaint contains no allegations about race or the deprivation of the right or ability to vote.  This action exclusively concerns the design of the primary election ballot.  At the hearing, Dicks recited a host of Voting Rights Act provisions that are not listed in the Complaint, and repeatedly argued that because Plaintiffs were forced to select a political party, they were effectively precluded from voting.  Dicks's reference to previously unidentified provisions does not expand the limited scope of this case nor address the Complaint's absence of allegations implicating the Voting Rights Act.  Therefore, Plaintiffs fail to state a Voting Rights Act claim under any of the cited provisions.  Amendment would be futile given the scope of the challenges raised in this case.

### 2.    Constitutional Claim

Plaintiffs also cite Article I, § 4 of the Constitution as one of the provisions at issue in this case, which provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  U.S. Const. art. I, § 4, cl. 1.  To the extent Plaintiffs' allegations could be construed as arising under this provision, and any potential § 1983 claim was not barred by the Eleventh Amendment, dismissal

would nevertheless result.  This case involves challenges to primary election ballot design, so this provision is inapplicable and appears to be cited in error.[5]  Leave to amend is unwarranted because it would be futile.

## D.    Supplemental Jurisdiction

In light of the dismissal of the claims conferring federal question jurisdiction, the Court would decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims if those claims were not barred by the Eleventh Amendment.  A state-law claim is part of the same case or controversy under Article III of the Constitution "when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation omitted).  Courts may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

---

[5]  The Court gave Plaintiffs an opportunity at the hearing to explain how this provision is relevant to the allegations here.  Dicks offered a non-response — that voters cannot be encouraged to select a political party under the Hawaiʻi Constitution and that they were not given an opportunity to vote due to the alleged unconstitutionality of the ballot.

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Courts declining to exercise supplemental jurisdiction, "must undertake a case-specific analysis to determine whether declining supplemental jurisdiction 'comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness and comity.'" *Bahrampour*, 356 F.3d at 978 (alteration in original) (citation omitted); *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  When a "case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (alteration in original) (internal quotation marks and citation omitted).

Here, considerations of judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over Plaintiffs' state-law claims.  The Court has dismissed the claims that conferred original jurisdiction and the case is in its infancy.  There are no other factors compelling the Court to deviate from the common practice of declining supplemental jurisdiction when no federal claims remain.  Accordingly, were Plaintiffs' state law claims not barred by the Eleventh Amendment, the Court would decline to exercise supplemental jurisdiction over them.

In sum, the Court concludes that:  (1) Plaintiffs' state law claims are subject to dismissal under the Eleventh Amendment, and alternatively, the Court would decline supplemental jurisdiction; (2) Plaintiffs' Constitutional claim is barred by the Eleventh Amendment and would otherwise be dismissed for failure to state a claim; and (3) Plaintiffs fail to state a claim under the Voting Rights Act.  Because amendment would be futile, the Court denies leave to amend.  *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010); *Wheeler v. Hilo Med. Ctr., Inc.*, Civil No. 09-00533 JMS/KSC, 2010 WL 1711993, at *8 (D. Haw. Apr. 27, 2010) (denying amendment as futile when dismissal is on Eleventh Amendment grounds).  Accordingly, the Complaint is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss.  ECF No. 18.

IT IS SO ORDERED.

DATED:     Honolulu, Hawaiʻi, August 30, 2022.



Jill A. Otake
United States District Judge

Civil No. 22-00347 JAO-WRP, *Dicks v. State of Haw., Office of Elections; Election Commission*; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT AND REQUEST FOR INJUNCTION FILED AUGUST 1, 2022 WITH PREJUDICE, OR IN THE ALTERNATIVE, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT